E. M. Robbins, Appellant, v. Albert Slavin et al.,
Defendants.
Hyman M. Selkowitz, Appellant, v. Albert Slavin et al.,
Defendants.
First National Bank of Chicago et al., Appellees, v.
E. M. Robbins et al., Appellants.

Gen. No. 39,564.

 Opinion

filed December 6, 1937. Rehearing denied December 20, 1937.

AARON SOBLE, of Chicago, for appellants; MAX CHILL, of Chicago, of counsel.

OSCAR S. SEAVER, H. IRVING RIPSTRA and HAROLD D. HUSZAGH, all of Chicago, for appellees.

MR. JUSTICE McSURELY delivered the opinion of the court.

This is an appeal by E. M. Robbins, plaintiff, and others, from an amendatory decree entered in foreclosure proceedings upon the petition of Ella McShane and other intervening petitioners.

November 16, 1932, E. M. Robbins, complainant, filed a bill alleging that she was the holder of notes aggregating $9,000, being part of an issue of $35,000 secured by a trust deed on real estate in Chicago; that a vacancy existed in the office of trustee due to the resignation of the Sheridan Trust & Savings Bank, the trustee named in the deed, and the refusal to act of the Chicago Title & Trust Company, the successor-trustee; that there were defaults in the payment of interest and taxes, and the appointment of a successor-trustee was asked with instructions to foreclose the trust deed; she alleged that the owners of the remaining notes were unknown and they were made parties defendant and served by publication as "unknown owners."

January 11, 1933, a decree was entered appointing Harry M. Selkowitz as successor-trustee. He filed a

bill to foreclose, also alleging that the owners of the notes not held by E. M. Robbins were unknown and making them parties defendant as "unknown owners" and service on them was by publication. October 9, 1933, decree was entered pursuant to the prayer of the bill.

November 28, 1933, Ella McShane, by leave of court, filed her petition asserting that she was the owner of one of the notes secured by the trust deed in the sum of $5,000 and alleged that she was made a party defendant to the bill of complaint of E. M. Robbins as "unknown owner" but that her name and address were known to the complainant or could have been readily ascertained by her. She alleged in substance that the notes were executed by Albert Slavin and were unconditionally guaranteed by Sam Slavin and Philip Slavin, duly indorsed upon each of the notes; that Sam and Philip Slavin were the beneficial owners of the real estate conveyed by the trust deed; that they purchased for their own account from the receiver of the Sheridan Trust & Savings Bank the notes for $9,000 described in complainant's bill for $3,800; that they procured the filing of the Robbins bill, in which petitioner and others were made parties defendant as unknown owners, although their names and places of residence could have been readily ascertained.

The petition also alleged that E. M. Robbins was not the owner of the notes aggregating $9,000 but holds them for the use and benefit of Sam and Philip Slavin, who are the real owners and liable as guarantors for the payment of the entire indebtedness; that the suit commenced by Robbins for the appointment of a trustee and the filing of the foreclosure proceeding by Selkowitz as trustee were instituted on behalf of Sam and Philip Slavin for the purpose of sharing ratably and upon a parity with the owners

of the remaining notes in the proceeds to be derived from a foreclosure sale of the mortgaged premises. Petitioner also alleged that she had no opportunity to contest the claims of Robbins nor voice in the appointment of Selkowitz as trustee; that he was not a disinterested person but an employee in the office of the solicitor for Robbins and was not a proper person to be appointed trustee.

Similar petitions were filed by other note holders shortly after the expiration of one year from the entry of the decree appointing Selkowitz successor-trustee. The First National Bank of Chicago as trustee, holder of one of the notes in question, by leave of court filed what is called a cross-bill setting forth substantially the same facts as contained in the petition of Ella McShane; all of these petitions and the cross-bill, with answers, were referred to a master in chancery who took evidence and made his report. The only evidence introduced was that on behalf of petitioners.

An amendatory decree was entered upon the report of the master and the appeal is from this decree. It in substance provides for the protection of the intervening petitioners and places them substantially as they would have been placed had they been made defendants to the original bill under their proper names and had been served with summons. The amendatory decree amends the prior decrees in (1) certain findings of fact relative to the appointment of Selkowitz as successor-trustee, but did not vacate the order of his appointment. (2) Removes Selkowitz as successor-trustee as of the date of the entry of the amendatory decree, thus preserving the filing of the supplemental bill of foreclosure, and appoints Lee Walker as successor-trustee, substituting him as complainant in the supplemental bill to foreclose. (3) Declares the notes of Robbins to be subject and subordi-

nate to the notes of the petitioners and treats the lien of the trust deed securing their notes as a first lien on the premises and the lien securing the notes held by Robbins as a second lien. (4) Provides for the payment of costs and master's fees and allows to Walker, trustee, for the use of the intervening petitioners, reasonable solicitors' and stenographer's fees, but did not allow any solicitors' fees on behalf of Selkowitz, the former successor-trustee. Certain expenses were allowed to Robbins, but subject and subordinate to the lien of the petitioners.

The decision in this case rests largely upon the facts. It was shown that Samuel Slavin, Philip Slavin and Albert Slavin are brothers; that the last named is the signer of the trust deed and notes in question; Sam and Philip Slavin were the beneficial owners of certain real estate in Chicago, held in trust for them by the Sheridan Trust & Savings Bank. About February 1, 1929, this trustee, upon direction of the beneficiaries, conveyed the title to Albert Slavin who thereupon executed the trust deed conveying the property to the bank as trustee to secure the notes in question, and Albert Slavin conveyed the equity in the property to the bank as trustee to hold for the benefit of and subject to the direction of Sam and Philip Slavin; about February 2, 1932, the bank as trustee, as directed by Sam and Philip Slavin, conveyed the title to Sam's daughter Perle, who has since held title for the use and benefit of her father Sam and her uncle Philip; she has turned over all rents derived from the property to them.

The notes executed by Albert Slavin and secured by the trust deed were 18 in number, aggregating $35,000, one or more of them falling due each year to and including 1936; Sam and Philip Slavin indorsed on each note an unconditional guarantee of its payment at maturity as if it were an original obligation,

their liability not to be discharged until full payment with interest.

The proceeds of the loan of $35,000 were used for the erection of a building on the real estate for the sale of automobiles, which since completion has been occupied by the North Town Motor Co., a corporation. Sam and Philip Slavin received the rent from this tenant, but they are also interested in the tenant motor company, both having power to sign its checks—Sam Slavin as its secretary-treasurer—and they are actively engaged in carrying on its business.

The Sheridan Trust & Savings Bank sold its customers all the notes of this issue except those aggregating $9,000 described in the Robbins bill of complaint; it kept a record of the names and addresses of the purchasers, and all of the petitioners, purchasers of these notes, reside at the same address in Chicago as shown on the bank record or may be reached through the addresses shown on the record.

The first part of 1932 the bank was closed by the State auditor and a receiver placed in charge; there came into the receiver's hands these unsold notes aggregating $9,000 and the list of names with addresses of those who had purchased the remainder of the issue. In the spring of 1932 these notes aggregating $9,000 were in default and Sam and Philip Slavin commenced negotiations with the receiver of the bank for their purchase at a discount; the interest, which fell due August 1, 1932, on the other notes outstanding and in the hands of purchasers, was paid by checks of the North Town Motor Company; the Slavins continued their negotiations with the receiver for the purchase of the $9,000 of notes in his possession and finally, about November 1, 1932, through Harry Freeman, as attorney for the Slavins, the notes aggregating $9,000 were purchased from the receiver for $3,800.

When the Sheridan Trust & Savings Bank, the trustee in the trust deed, went into the hands of the receiver there was an understanding that the receiver would resign this trust, and Freeman, acting for the Slavins, through an intermediary procured the refusal to act of the Chicago Title & Trust Company, named in the trust deed as successor-trustee. When the purchase of the notes from the receiver was closed his resignation to act as trustee and the refusal of the Chicago Title & Trust Company to act were filed of record, thus leaving vacant the office of trustee under the trust deed.

At this same time there was delivered to Mr. Freeman the entire files of the bank relating to this mortgage, which included a list of the names and addresses of the persons who had purchased from the bank the notes of this issue; Freeman took a copy of the list from the bank and later wrote letters to these purchasers proposing to buy their notes at a discount on behalf of his clients, the Slavins. Freeman turned the notes purchased from the receiver over to Mr. Aaron Soble, the present attorney of record for the appellants, with instructions to file a bill for the appointment of a trustee to fill the vacancy and to foreclose the trust deed. The bill for appointing a successor-trustee was filed in the name of plaintiff E. M. Robbins, who is Mr. Soble's stenographer; Miss Robbins typed the bill and affidavits of unknown owners and non-residence of the holders of the other notes, as dictated by Mr. Soble, who made no inquiry as to the owners of the remaining notes. It is also in evidence that when the interest maturing in August, 1932, was paid on these outstanding notes it was paid to virtually every note holder in person and nearly all of their names and the names of their agents appear on their checks and in the rent account of the North Town Motor Company and were known to Sam Slavin.

The master found, as did also the decree, that the names and addresses of the owners of the notes other than those held by E. M. Robbins were readily ascertainable prior to the filing of the bill to appoint a successor-trustee and that the petitioners were entitled to have service by publication on them quashed, and the decrees of January 11 and October 9, 1933, vacated.

Hyman M. Selkowitz, who was appointed successor-trustee, described in the decree drawn by Mr. Soble as a disinterested person, is a law clerk employed by Mr. Soble. The record shows that Selkowitz has joined with E. M. Robbins in opposing the interest of the petitioners in this litigation.

The appealing parties first make the point that while Ella McShane is properly before the court, having filed her petition within one year after the first decree was entered, the other note holders, petitioners, are not properly before the court as their petitions were filed shortly after the expiration of one year. Sec. 19 of the Chancery Act of 1931, ch. 22, Cahill's Ill. St. 1931, ¶ 19, provided that when any final decree has been entered against a defendant served by publication, he may, within one year after the entry of the decree, file a petition touching the matter of the decree which the court may hear, and may alter or amend the decree as shall appear just. The remaining petitions were filed within one year after the entry of the decree of foreclosure but after one year had elapsed from the entry of the decree appointing a successor-trustee. The question of the one year limitation, then, arises only in respect to the decree appointing the successor-trustee.

The statute prescribing proceedings against unknown owners contemplates an honest and well directed effort to ascertain the names and addresses of unknown parties. Where the record shows that such

an effort has been made, then the period within which such a defendant may file a petition is limited to one year, but this limitation does not apply where the names and addresses of the defendants could have been readily ascertained. *Graham v. O'Connor,* 350 Ill. 36, involved a case where the record showed that due inquiry had not been made of a necessary party; the affidavits did not speak the truth and it necessarily followed that the court did not acquire jurisdiction over the parties by constructive service based upon false affidavits. The court held that, "The decree so obtained may be set aside at any time thereafter on the discovery of fraud," citing *Busby v. Maus,* 294 Ill. 401. The court also held that sec. 19 of the Chancery Act did not apply in such a case, but applied only, "where, as a matter of fact, unknown parties are properly made parties to the action." Other cases to the same effect are *Wellington v. Heermans,* 110 Ill. 564, 573; *Wright v. Simpson,* 200 Ill. 56, (62, 63); *Caswell v. Caswell,* 120 Ill. 377, 385; and *Correll v. Greider,* 245 Ill. 378, 381.

The appearance of the Chicago Title & Trust Company and the First National Bank of Chicago in the foreclosure suit is questioned. We do not think the point is important. The appearance in this suit was not an appearance in the suit to appoint a successor-trustee. Upon discovering the jurisdictional defect in this appointment they had a right to be heard. *Northern Trust Co. v. Sanford,* 308 Ill. 381, 392. Moreover, it is admitted that Ella McShane's petition was filed within one year of the entry of both decrees and that she asked that they be vacated or amended as the circumstances required. If the relief she asked for was proper the amendatory decree should not be vacated with reference to other petitioners seeking the same relief.

We think the court properly removed Selkowitz as successor-trustee. A trustee filing a bill to foreclose at the demand of one note holder must make reasonable inquiry to ascertain the names and addresses of the other note holders. Mr. Selkowitz took no action to this end although upon application to the Sheridan Trust & Savings Bank, the resigning trustee, he could have obtained the names and addresses of the holders of the outstanding notes. He made them parties to his bill as unknown owners. This clearly was opposed to their interests. Moreover, when the petitioners sought to assert their rights in court he joined with Robbins in contesting their right to be heard. It is conclusively shown that the resignation of the Chicago Title & Trust Company as successor-trustee was procured so that a trustee could be appointed who was not free to act independently but was subject to the directions and orders of the attorney for the plaintiff. It is also difficult to escape the conclusion that making the petitioners parties to the bill as unknown owners was intentional so that the foreclosure proceeding would take place without their knowledge. The decree of the court properly removed Selkowitz as trustee and allowed him no compensation for his services.

As we have already noted, each note bore the guaranty of Sam and Philip Slavin unconditionally guaranteeing payment at maturity, "as if it were an original obligation executed by us," and "further agree that our liability under this guaranty is not to be discharged by any act of the holder of the within note until full payment thereof, with interest and costs as aforesaid." Although plaintiff earnestly denies that the notes aggregating $9,000 were purchased from the receiver of the Sheridan Trust & Savings Bank by Sam and Philip Slavin, the testimony convincingly proves that the Slavins were the real purchasers although the negotiations were carried on in their behalf by a go-between.

Bearing in mind that the Slavins were the real owners of the mortgaged premises and also the real debtors upon the notes and trust deed and the guarantors of the notes, the question is presented as to whether, upon a foreclosure under such circumstances, such notes so acquired by them may be considered as purchased by a stranger and therefore properly decreed to be upon a parity with notes held by others. It seems self-evident that the Slavins in purchasing the notes from the receiver of the bank cannot be considered as strangers. They are obligated by their guaranty to pay the notes upon maturity. They cannot escape their obligation to pay them by purchasing them at a discount, to the injury of other note holders.

Plaintiff argues as if the question of merger were involved. The decree does not so find, but finds that the lien of the notes purchased by the Slavins is subordinate to the lien of the other notes. Examination of the cases involving this question clearly show that if the guarantors pay the entire debt they then become entitled, by subrogation, to proceed against the security for the entire amount of the debt; but where they purchase only a part of the notes guaranteed by them their rights are subordinated to the rights of the other note holders. In other words, the whole indebtedness must first be paid before a guarantor can seek reimbursement from the security. In *Darst v. Bates*, 51 Ill. 439, 446, Bates held a mortgage on certain premises to secure him against loss because he had guaranteed certain notes secured by another mortgage; foreclosure proceedings of both mortgages were commenced; Bates had never been required to pay the notes he had guaranteed and the bill to foreclose his mortgage was dismissed, the court holding that he had no right of recovery until he had paid the debt for which the notes were given. In *Conwell v. McCowan*, 53 Ill. 363, and *Elgin Nat. Bank v. Goecke*, 295 Ill. 403, 408, it is stated as an elementary principle of subroga-

tion that the right does not exist until the surety has actually paid the debt. In 25 R. C. L. sec. 6, p. 1318, is a full discussion of the subject of Subrogation, the author saying that a person is not entitled to be subrogated to a creditor's securities until the claim of the creditor has been paid in full. "A *pro tanto* assignment or subrogation will not be allowed." And the author well says that the reason for the rule is that if the surety upon making a partial payment became entitled to subrogation, it would operate to place him upon a footing of equality with the holders of the unpaid part of the debt, and if the property were insufficient to pay the remainder of the debt for which the guarantor was bound the loss would fall proportionately upon the creditor and upon the surety, and that, "Such a result would be grossly inequitable." Obviously it would be unjust to permit a guarantor, on payment of part of a debt, to appropriate to himself the security which the creditor holds for the satisfaction of the entire indebtedness. Also to the same effect is 60 C. J., sec. 54, p. 745, and *London & N. W. Am. Mtg. Co. v. Fitzgerald,* 55 Minn. 71; *Rice v. Morris,* 82 Ind. 204; *Loeb v. Fleming,* 15 Ill. App. 503; and *State Bank of Rock Island v. Bryan,* 186 Ill. App. 207 (209, 210) (aff'd 268 Ill. 151). Plaintiff cites *Chicago Title & Trust Co. v. Bidderman,* 275 Ill. App. 457, as holding to the contrary, but there was an express agreement that any notes purchased by the guarantors may stand upon a parity with the remaining notes. Other cases cited by plaintiff involve a merger, but as we have said, this is not a case of merger but of subrogation.

Applying the rule as above stated to the present situation, we hold that plaintiff Robbins holds notes for the guarantors and that they are not entitled to payment on these notes out of the proceeds from the sale of the mortgaged premises until the petitioners'

guaranteed notes are paid in full. The lien of the notes held by Robbins was properly subordinated to the lien of the notes held by petitioners.

We are of the opinion the court properly disallowed solicitor's fees to Selkowitz, the former trustee. In view of the relationship between plaintiff Robbins, Soble's stenographer, and Selkowitz, his clerk, solicitor's fees to Mr. Soble should not be allowed. This is especially true when we consider the manner in which the rights of the holders of the outstanding notes were intentionally violated.

Complaint is also made of the allowance of $4,500 as fees for the solicitors of the intervening petitioners and cross complainant. The decree recites that the evidence taken in open court shows that this is the fair, reasonable and customary solicitor's fee for the services performed in this case. Having in mind the character of the litigation and the strenuous opposition made by plaintiff and trustee Selkowitz to the claims of the intervening petitioners, we cannot say that the allowance is improper.

The amendatory decree does complete justice to all of the parties and no sufficient reason has been presented for its reversal. It is therefore affirmed.

*Affirmed.*

O'CONNOR, P. J., and MATCHETT, J., concur.