APPLEGATE APARTMENTS LIMITED PARTNERSHIP, Plaintiff-Appellee and Cross-Appellee, v. COMMERCIAL COIN LAUNDRY SYS-TEMS, Defendant-Appellee and Cross-Appellant.

First District (6th Division)   No. 1—94—2492

Opinion filed November 17, 1995.

Steven M. Ruffalo and Robert F. Fuchs, both of Fuchs & Roselli, Ltd., of Chicago, for appellant.

August A. Pilati and Kenneth A. Fedinets, both of Gesas, Pilati & Gesas, Ltd., and Russell G. Winick and Susan A. Ayres, both of Schultz & Winick, both of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The issue in this case is the quality of notice required to be given to a tenant in possession by a mortgagee in a consent mortgage foreclosure proceeding.

The mortgagee is Home Savings of America (Home Savings), which sold the foreclosed property to the plaintiff, Applegate Apartments, which subsequently filed an action for forcible entry and detainer against the defendant, Commercial Coin Laundry Systems, a tenant of the mortgagor under a written lease. The trial judge granted summary judgment to the defendant and denied the plaintiff's motion for summary judgment. He also entered an order fixing the rate of rent the defendant was to pay under the lease. The plaintiff appeals from the orders granting the defendant's motion for summary judgment and denying its own motion for summary judgment. The defendant cross-appeals from the order fixing its rent.

On or about June 16, 1986, a mortgage was executed by Chicago Title & Trust Company, as trustee under a land trust, and Home Savings, as lender, for the property consisting of 192 apartments,

commonly known as Applegate Apartments, located at 60 East Beech Drive, Schaumburg, Illinois. (It is now known as Beech Pointe Apartments.) The amount of the mortgage was $5.7 million. An assignment of rents was also entered into between the mortgagor, as assignor, and the mortgagee, as assignee. The mortgagee recorded its mortgage and assignment of rents with the Cook County registrar of titles on or about July 8, 1986.

On or about June 7, 1988, a laundry room lease was executed by the defendant, as lessee, and Investors Realty Services, Inc., the mortgagor's authorized agent, as lessor. The laundry rooms and facilities were leased to the defendant for a period of five years. Pursuant to the lease, the defendant installed laundry equipment on the premises on October 1, 1988, and has operated that equipment since that time. The defendant did not record its lease with the registrar of titles. The mortgagee did not consent to the execution of the lease; the mortgage did not require the mortgagee's consent.

Under the terms of a rider to the lease, the 5-year lease would be expanded to an additional 10 years, unless the lessee gave notice 60 days before the expiration of the 5-year term of its intention not to extend the lease. Both the lessee and lessor could terminate the lease after the extended term began subject to certain time limitations. The rider provided that the lessor would pay rent in the sum of 55% of the receipts from the lessees' coin-operated equipment. The rider was to terminate "upon change of ownership or change of management or change of management company or sale of property or transfer or assignment of this lease." If the rider was terminated, the rent would revert to the terms of the lease itself, which provided for rent in the sum of 15% of the coin receipts.

The defendant installed laundry equipment which was identified as the defendant's property through attached labels. The labels also provided the defendant's telephone number. Identical information was displayed on several signs in the laundry facility; the signs measured $14\frac{1}{2}$ inches by $10\frac{3}{4}$ inches and were posted shortly after the commencement of the lease.

On March 6, 1992, the mortgagee filed a complaint for foreclosure in the circuit court of Cook County alleging an indebtedness of almost $6.2 million, including an unpaid principal balance of almost $5.6 million. On March 10, the mortgagee recorded its *lis pendens* notice with the registrar of titles. On April 29, 1992, a judgment of consent foreclosure was entered which vested absolute title to the property in the mortgagee. The judgment also provided that the mortgagor would not be liable for any deficiency judgment.

The defendant was not named in the complaint and did not ap-

pear in the foreclosure action. The complaint and the judgment of foreclosure did not identify the defendant's leasehold interest as one to be terminated in the foreclosure proceedings. The mortgagee filed its affidavit for service by publication as to all nonrecord claimants and unknown owners who were served by publication. The affidavit, which was on a circuit court of Cook County form, was signed by the attorney for the mortgagee and alleged "on information and belief [the nonrecord claimants and unknown owners] cannot be found so that process cannot be served upon defendant [*sic*]." The words "on due inquiry" were crossed out and the words "upon information and belief" were substituted. The affidavit further alleged that the places of residence of the nonrecord claimants and unknown owners "cannot be ascertained and his [*sic*] last known place of residence is unknown." The words "upon diligent inquiry" were crossed out.

On May 20, 1992, 20 days after the entry of the judgment of consent foreclosure, the mortgagee's agent, Draper & Kramer, Inc., sent a letter of introduction to the defendant which made no mention of the foreclosure action, but it informed the defendant that Draper and Kramer was the new management company for the property. After being notified of the change in management, the defendant reduced its rental payments from 55% to 15% of the gross coin receipts generated by the laundry operation, pursuant to the terms of the rider to the lease.

In December 1992, the mortgagee, Home Savings, sold its interest in the property to a land trust of which the plaintiff is the beneficiary. The mortgagee sent the defendant a letter dated December 18, 1992, stating:

"Since the time that Home Savings of America entered upon and took exclusive possession of the Property pursuant to its Mortgage, Home Savings of America has neither accepted any rent payment from Commercial [the defendant] nor recognized Commercial as a tenant under the existing lease.

Therefore, the lease and your rights to possession are deemed void and terminated. We further demand that you immediately vacate possession of the premises occupied by you at the above-referenced Property."

The defendant responded by letter dated January 5, 1993, refusing to relinquish possession and asserting the continuing validity and enforceability of the lease. On January 11, the plaintiff filed its complaint for possession under the Forcible Entry and Detainer Act. 735 ILCS 5/9—101 *et seq.* (West 1992).

The defendant filed its appearance and later filed a motion for summary judgment asserting that, because the mortgagee failed to

make the defendant a party to the foreclosure, the defendant had no actual notice of the proceedings, and therefore the proceedings did not become binding upon the defendant even though the lease was subordinate to the mortgage. The plaintiff then filed its cross-motion for summary judgment with supporting affidavits, stating that in the absence of any agreement between either the defendant and the plaintiff or the mortgagee, the defendant's junior lease was unenforceable against the mortgagee and, therefore, against the plaintiff.

The judge subsequently entered an order granting summary judgment to the defendant. The plaintiff then filed a motion to reconsider and raised, for the first time, the issue of the *lis pendens* notice recorded by the mortgagee. The judge denied the plaintiff's motion to reconsider and allowed the parties to file briefs on the question of the amount of rent due under the lease. The judge subsequently entered an order fixing the rent due at 55% of gross revenues and rejected the defendant's argument that the rent should have been restricted to 15% of gross revenues.

The parties have exhaustively briefed and argued this case both in the trial court and in this court and have cited many cases. Although we appreciate the industry and scholarship of the attorneys, we deem some of the arguments irrelevant. One example is the argument over whether, under present Illinois law, a mortgagee's interest is an interest in title or a lien interest. (Compare *Kelley/Lehr & Associates, Inc. v. O'Brien* (1990), 194 Ill. App. 3d 380, 551 N.E.2d 419, with *Silverstein v. Schak* (1982), 107 Ill. App. 3d 641, 437 N.E.2d 1292.) Another example is the argument over whether the Illinois Mortgage Foreclosure Law (the Act) (735 ILCS 5/15—1101 *et seq.* (West 1992)) is but a codification of, or is a radical departure from, the existing common law. We have determined that this case depends upon our interpretation of the Act, but that we may consider cases decided before the Act was adopted in 1987 in making our interpretation. As an academic matter, we note that the Act does contain some modifications of the common law.

At this point we turn to the plaintiff's argument that under the Act a tenant in possession is not a necessary party. In support of that argument, the plaintiff refers to the language of section 15—1501(a). (735 ILCS 15—1501(a) (West 1992).) We agree that, under the express terms of section 15—1501(a), only the mortgagor and other persons who owe on indebtedness or obligations secured by the mortgage and against whom personal liability is asserted are necessary parties. That section further provides that the "court may proceed to adjudicate their respective interests, but any disposition of the mortgaged real estate shall be subject to (i) the interests of all other

persons not made a party or (ii) interests in the mortgaged real estate not otherwise barred or terminated in the foreclosure." (735 ILCS 5/15—1501(a) (West 1992).) Section 15—1501(b) lists all permissible parties which include "[a]ll persons having a possessory interest in the mortgaged real estate." 735 ILCS 5/15—1501(b) (West 1992).

■ We have two observations to make initially. The first is that section 15—1501 is included in that part of the statute dealing with "judicial foreclosure procedure." This complaint was brought under section 15—1402 of the Act (735 ILCS 5/15—1402 (West 1992)), which deals with consent foreclosures and which is silent as to who are necessary parties.

The second observation is that before the adoption of the Act in 1987, a tenant in possession was held in some cases to be a necessary party. (See J. Gearen, J. Vranicar & E. Becker, *Into Harms' Way: Now That Harms v. Sprague Has Established the Lien Theory of Mortgages in Illinois, Does Foreclosure Cut Off Junior Lease or Can a Mortgagee Elect to Preserve Them?*, 34 DePaul L. Rev. 449, 463-70 (1985).) The question arises: Did the legislature intend by the adoption of the Act that a tenant in possession be not considered a necessary party in a consent foreclosure proceeding? Although the answer is not clear because of the separation in the Act between consent foreclosures and judicial foreclosures, we will assume that a tenant in possession is not a necessary party in a consent foreclosure proceeding. That being so, another question arises: If tenants in possession are not necessary parties but do have a possessory interest, how are they to be notified of the consent foreclosure proceedings?

■ Section 15—1402(a), which as noted is the section under which the foreclosure action was filed, provides that in a consent foreclosure judgment the mortgagee shall obtain title free and clear of all claims (except liens of the United States) including "nonrecord claimants given notice in accordance with" the provisions of section 15—1502(c)(2). (735 ILCS 5/15—1402(a) (West 1992).) Both parties agree that the defendant is not a nonrecord claimant, which is defined in section 15—1210. (735 ILCS 5/15—1210 (West 1992).) There is nothing in section 15—1402(a) about the rights of unknown owners or notice to unknown owners. As noted, there is reference to unknown owners in section 15—1501(c), which deals with judicial foreclosures. Section 15—1402(b) also provides that any party with an interest in the property may object to the consent foreclosure. (735 ILCS 5/15—1402(b) (West 1992).) Tenants in possession are obviously parties with an interest in the property. Therefore, if tenants in possession are not necessary parties and they are not nonrecord claimants, we agree with the plaintiff that they must perforce be considered unknown

owners. Section 15—1501(c) provides that any unknown owner may be made a party in accordance with section 2—413 of the Code of Civil Procedure (the Code) (735 ILCS 5/2—413 (West 1992)). Section 15—1221 of the Act provides that "unknown owner" means the same as "unknown owner" as used in section 2—413 of the Code. 735 ILCS 5/15—1221 (West 1992).

■ Section 2—413 provides that persons interested "whose names are unknown" may be made parties to an action "by the name and description of unknown owners ***; but an affidavit shall be filed by the party desiring to make those persons parties stating that their names are unknown." (735 ILCS 5/2—413 (West 1992).) It has been repeatedly held that persons seeking a judgment against unknown owners must make an honest attempt to see that interested parties have notice of proceedings involving their property rights. (See *Mulvey v. Gibbons* (1877), 87 Ill. 367; *Busby v. Maus* (1920), 294 Ill. 401, 128 N.E. 564; *Graham v. O'Connor* (1932), 350 Ill. 36, 182 N.E. 764; *Callner v. Greenberg* (1941), 376 Ill. 212, 33 N.E.2d 437 (for service by publication to be binding on parties as "unknown owners" there must be a well-directed effort to ascertain the names and addresses of the unknown owners or parties, and the inquiry must be as full as the circumstances of the situation permit); *Romain v. Lambros* (1955), 7 Ill. 2d 206, 129 N.E.2d 739, *transferred* (1956), 12 Ill. App. 2d 64, 138 N.E.2d 704; *Seymour v. Edwards* (1889), 31 Ill. App. 50; *Robbins v. Slavin* (1937), 292 Ill. App. 479, 11 N.E.2d 651.) It is our judgment that the record establishes, as a matter of law, that the plaintiff did not exercise due diligence in attempting to ascertain the identity of the defendant tenant in possession and that the plaintiff failed to establish, as a matter of law, that the plaintiff did not know of the interest of the defendant tenant in possession.

■ At this point we refer to the assertions made by the plaintiff throughout its briefs that "at no time prior to or during the Foreclosure was the Mortgagee either *advised of* or did it consent to the Lease" (emphasis added) and that the mortgagee did not join the defendant in the foreclosure action because "it was unaware of Defendant's unrecorded interest in the Property." In support of its claim that it was never "advised of" or was "unaware of" the lease, the plaintiff refers to a letter sent by the mortgagee to the defendant on December 18, 1992, and affidavits filed by the plaintiff both in support of its motion for summary judgment and in response to the defendant's motion for summary judgment. Those exhibits established that the mortgagee never acknowledged or consented to the lease, but they certainly do not establish that the mortgagee was unaware of the lease. To illustrate, the defendant submitted the affidavit of one of its partners in which he recited the following:

"On numerous occasions between April 29, 1992, and December 18, 1992, various management agents for Applegate Apartments, and an agent for Commercial [the defendant], conducted joint field audits of the laundry revenues at the Leased Premises. At each of approximately sixty (60) such field audits, the management agents and commercial agents filled out and jointly executed a Courtesy Service Acknowledgment and Receipt form."

In response to that affidavit the plaintiff filed affidavits of three employees of Draper & Kramer, who stated that at the request of the defendant, they participated in coin counts and signed a "Courtesy Service Acknowledgement and Receipt" solely to verify and acknowledge that the count was conducted and that the amounts recorded were consistent with the coin count. Those counts took place between April 29, 1992, and December 18, 1992, at the Applegate Apartments. All three swore that they were never authorized or qualified to certify or affirm whether Commercial Coin had a lawful lease. The plaintiff also submitted the affidavit of a vice-president of Draper & Kramer, in which he swore that at no time since taking possession of the property on April 30, 1992, did Draper & Kramer acknowledge "the existence of a landlord/tenant relationship" between the mortgagee and the defendant. The vice-president was the same person who sent the letter on May 20, 1992, to the defendant "re: Applegate Apartments" informing the defendant that Draper & Kramer had assumed the management of Applegate Apartments. In his affidavit, that vice-president never explained what prompted him to send the letter to the defendant on May 20, 1992, 20 days after the foreclosure.

Similarly, in the letter of December 18, 1992, from the mortgagee to the defendant, the mortgagee's vice-president said that subsequent to the recordation of the mortgage the defendant "purportedly" entered into a lease of the laundry room beginning on October 1, 1988, for a term of 10 years. The plaintiff never explained when the mortgagee became aware of the lease. In fact, in our judgment, the question of when the mortgagee was finally "advised" of the lease was artfully avoided in the plaintiff's affidavits.

This property, which was worth several million dollars, is rental property containing 192 apartments. The mortgage was secured by an assignment of rents. Common sense dictates the conclusion that, when the mortgagor defaulted, the parties negotiated before the mortgagee agreed to a foreclosure judgment which barred a deficiency judgment against the mortgagor. It defies reason to conclude that the mortgagee negotiated with the mortgagor without knowing the status of all leases on the property. We note that the consent foreclosure complaint did not name *any* tenants.

■ At this point, we refer to the affidavit of the attorney for the mortgagee swearing that "on information and belief" he was unaware of the names and addresses of *any* nonrecord claimants *and* unknown owners. From this we must conclude that the attorney for the mortgagee never asked for the identities of the lessees or, if he asked, he was told by the mortgagor that there were none and he accepted that statement without any further inquiry. We express no judgment as to the credibility of the affidavit, but we will observe that the affidavit clearly shows an absence of due diligence.

The plaintiff relies on section 15—1502(c) of the Act, which provides that the existence, names or present or last known places of residence of certain persons are unknown may be made upon information and belief. That section also provides that the affidavit need not state that inquiry has been made to ascertain the names or present or last known places of residence. But that section applies only to notice to nonrecord claimants. It does not apply to unknown owners. In short, the affidavit of the attorney of the mortgagee was insufficient to establish notice to the unknown owners, including the defendant. See *Hartung v. Hartung* (1881), 8 Ill. App. 156.

The plaintiff also relies on *Agribank, FCB v. Rodel Farms, Inc.* (1993), 251 Ill. App. 3d 1050, 623 N.E.2d 1016, and that court's interpretation of section 15—1503 of the Act, which provides that a notice of foreclosure recorded in the county in which the property is located "shall be constructive notice of the pendency of the foreclosure to every person claiming an interest in or lien on" the property "whose interest or lien has not been recorded prior to the recording of such notice of foreclosure." (735 ILCS 5/15—1503 (West 1992).) In *Agribank*, which involved a judicial foreclosure action, the lessee did not record his lease. The mortgagee did record its notice of foreclosure. The lessee was not made a party to the foreclosure. The foreclosure judgment was entered on January 1990. The lessee recorded his lease three years later. The mortgagee filed an action against the lessee for post-foreclosure possession.

The lessee relied on section 2—1901 of the Code, which provides that a *lis pendens* notice in the county recorder's office shall be:

"constructive notice to every person *subsequently acquiring* an interest in or a lien on the property affected thereby, and *** every person acquiring an interest or lien as above stated, *not in possession of the property* and whose interest or lien is not shown of record at the time of filing such notice, shall, for the purposes of this Section, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he or she were a party thereto." (Emphasis added.) (735 ILCS 5/2—1901 (West 1992).)

The Third District Appellate Court held that section 2—1901 did not apply because it was superseded by section 15—1503:

> "A notice which complies with this Section shall be deemed to comply with Section 2—1901 of the Code of Civil Procedure and shall have the same effect as a notice filed pursuant to that Section; however, a notice which complies with Section 2—1901 shall not be constructive notice unless it also complies with the requirements of this Section." 735 ILCS 5/15—1503 (West 1992).

■ We do not read section 15—1503 to mean what the *Agribank* court read it to mean. Section 2—1901 of the Code requires that a notice set forth the title of the action, the parties to it, the court where it was brought and a description of the real estate. Section 15—1503 provides that the notice of foreclosure must include the names of plaintiffs and the case number, the court in which the action was brought, the names of title holders of record, a legal description of the real estate sufficient to identify it with reasonable certainty, a common address or description of the location of the real estate and identification of the mortgage sought to be foreclosed. As is obvious, the requirements of the notice under section 15—1503 are more detailed and comprehensive than are the notice requirements under section 2—1901. We read section 15—1503 to mean that the contents of the notice spelled out in section 2—1901 will not be sufficient to meet the requirements of section 15—1503. We do not read it to mean that the legislature intended that a notice under section 15—1503 would be sufficient to a person in possession of the property but that a notice under section 2—1901 would not be. In this regard, we must respectfully disagree with the third district in *Agribank*.

We must also disagree with the court's rejection of the lessee's argument that the *lis pendens* doctrine applies only to those acquiring an interest subsequent to the notice being filed. The court concluded that the cases cited by the lessee, *Mid-Town Petroleum, Inc. v. Dine* (1983), 114 Ill. App. 3d 112, 448 N.E.2d 596, and *Niles Construction Co. v. La Salle National Bank* (1969), 119 Ill. App. 2d 1, 254 N.E.2d 535 (abstract opinion), were inapposite because they did not involve foreclosure proceedings or notices pursuant to section 15—1503 of the Act.

We note that in *General Electric Credit Corp. v. American National Bank & Trust Co.* (N.D. Ill. 1983), 562 F. Supp. 456, a mortgage foreclosure action, the court construed the predecessor of section 2—1901 (Ill. Rev. Stat. 1981, ch. 110, par. 405):

> "This language indicates that the statute does not apply to unknown owners and non-record claimants who have an interest in the property as of the date the complaint was filed, but only to

those who acquire an interest *after* the lis pendens notice is filed." (Emphasis in original.) (*General Electric*, 562 F. Supp. at 461.) We recognize that *General Electric* was decided before the adoption of the Act in 1987; but we refuse to accept the argument that the legislature intended, by the adoption of section 15—1503, to extend the binding effect of such a notice filed in a foreclosure action against a tenant in possession.

Cases considering the purpose of *lis pendens* statutes hold that one of the purposes is to alert persons who have not yet acquired an interest or lien in the property of the existence of pending litigation. (See, *e.g., Admiral Builders Corp. v. Robert Hall Village* (1981), 101 Ill. App. 3d 132, 427 N.E.2d 1032.) It makes no sense to hold that a *lis pendens* notice of foreclosure proceedings should bind a tenant already in possession. To hold otherwise would mean that a tenant in possession must regularly check the records of the county recorder's office to determine whether a foreclosure action has been filed.

We agree with the defendant's argument that acceptance of the plaintiff's claim that section 15—1503 applies to tenants in possession at the time a *lis pendens* notice is filed would create serious due process questions. (See *Mennonite Board of Missions v. Adams* (1983), 462 U.S. 791, 77 L. Ed. 2d 180, 103 S. Ct. 2706.) It is a fundamental rule of statutory construction that a statute must be interpreted as to promote its essential purposes and to avoid, if possible, a construction that would raise doubts as to its validity. (*People v. Nastasio* (1960), 19 Ill. 2d 524, 168 N.E.2d 728.) If we were to interpret section 15—1503 as the plaintiff maintains, any possible due process infirmities would be obviated by the further interpretation that actual possession and occupation by a lessee are legally tantamount to the recording of the lease and thus satisfy the requirement of section 15—1503, as was held under another statute in *Dana Point Condominium Association, Inc. v. Keystone Service Co.* (1986), 141 Ill. App. 3d 916, 491 N.E.2d 63. We are not persuaded that the holding of *Dana Point* is inapplicable here because it involved the Conveyancing Act rather than the Mortgage Foreclosure Law. Moreover, acceptance of the wide-reaching effects of section 15—1503, as urged by the plaintiff, would render meaningless the other specific notice provisions of the Act dealing with service by publication, *e.g.,* section 15—1502(c)(2). A statute must receive a sensible construction even though such construction qualifies the universality of its language. *City of East St. Louis v. Union Electric Co.* (1967), 37 Ill. 2d 537, 229 N.E.2d 522.

For these reasons, we judge that the court entering the consent foreclosure judgment did not have jurisdiction over the defendant and that the plaintiff acquired the property subject to the defendant's

lease. Therefore, the orders of the circuit court granting summary judgment to the defendant and denying summary judgment to the plaintiff are affirmed.

■ We turn now to the defendant's cross-appeal. Under the original lease the rent was to be 15% of the coin receipts. The rider to the lease provided that the rent was to be 55% of the coin receipts; but the rider further provided that it would terminate "upon change of ownership or change of management or change of management company or sale of property or transfer or assignment of this lease." Therefore, it is clear that if the rider was terminated, the original rent of 15% of coin receipts would apply. The plaintiff raises several arguments to support the judge's holding that the 55% rent as provided in the rider was still applicable:

(1) Section 9—215 of the Code (735 ILCS 5/9—215 (West 1992)) supports the judge's ruling;

(2) The trial judge properly "balanced the equities" because the defendant was "claiming inconsistent rights."

(3) The term of the lease calling for rent of 15% of the coin receipts is unconscionable.

We must reject all of the plaintiff's arguments:

(1) Section 9—215 simply provides that a grantee or assignee of leased lands shall have the same rights against the lessee, including actions for rent, as the grantee or lessor "for the non-performance of any agreement." There has been no "non-performance" by the defendant.

(2) There has been no balancing of the equities and the defendant has not claimed inconsistent rights. The defendant was entitled to possession under its lease pursuant to a contract. It claims the same right to pay rent pursuant to the same contract.

(3) The plaintiff has failed to establish any unconscionability of the rental terms. The parties have entered into an unambiguous lease, which is governed by the law applicable to all contracts. (*Design Studio International, Inc. v. Chicago Title & Trust Co.* (1989), 185 Ill. App. 3d 797, 541 N.E.2d 1166.) Where the parties have entered into an unambiguous contract, the court cannot remake a contract to give a litigant a better bargain than he himself was satisfied to make. (*Michigan Avenue National Bank v. Evans, Inc.* (1988), 176 Ill. App. 3d 1047, 531 N.E.2d 872.) For these reasons, we conclude that the judge erred in fixing the rent at 55% of the coin receipts. The order fixing rent at 55% of the coin receipts is reversed and the rent is fixed at 15% of the coin receipts as provided in the original lease.

Judgment affirmed in part and reversed in part.

McNAMARA, P.J., and RAKOWSKI, J., concur.