# Illinois Official Reports

## Appellate Court

---

### *Gorman-Dahm v. BMO Harris Bank, N.A.*, 2018 IL App (2d) 170082

---

| | |
|---|---|
| Appellate Court Caption | MEGHAN GORMAN-DAHM, as Administrator of the Estate of Kathleen Gorman, Deceased, Plaintiff-Appellant, v. BMO HARRIS BANK, N.A.; STEPHAN G. DADAY; and KLEIN, DADAY, ARETOS and O'DONOHGHUE, LLC, Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-17-0082 |
| Filed | January 17, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 16-CH-293; the Hon. David R. Akemann, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Gary D. McGuane, of Aurora, for appellant.<br><br>Stephen G. Daday and Julie A. Repple, of Klein, Daday, Aretos & O'Donoghue, LLC, of Rolling Meadows, for appellee BMO Harris Bank, N.A.<br><br>David A. Sorensen, of Law Offices of Edward J. Kozel, of Chicago, for other appellees. |

Panel                JUSTICE BURKE delivered the judgment of the court, with opinion. Justices McLaren and Schostok concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiff, Meghan Gorman-Dahm, as administrator of the estate of Kathleen Gorman, deceased, filed a complaint against defendants, BMO Harris Bank, N.A. (BMO); Stephan G. Daday; and Klein, Daday, Aretos and O'Donoghue, LLC, consisting of five counts: count I for slander of title, counts II and IV for punitive damages, count III for abuse of process, and count V for partition. The trial court granted defendants' motion to dismiss all counts, finding that (1) the absolute litigation privilege barred counts I and III, (2) there was no separate cause of action for punitive damages (counts II and IV), and (3) the partition claim in count V was at issue in another case, the underlying foreclosure complaint pending in the same circuit. Plaintiff contends that the trial court erred in dismissing counts I, III, and V of her complaint.[1] We affirm.

¶ 2                                  I. FACTS
¶ 3                        A. Underlying Foreclosure Complaint
¶ 4        The underlying foreclosure complaint arose from a mortgage loan made by Amcore Bank, N.A. (Amcore), BMO's predecessor in interest, to Kathleen's husband, John P. Gorman (deceased), on November 30, 2007, in the amount of $750,000, which was secured by property commonly known as 760 Church Street, Batavia, Illinois. The property had been owned by John and Kathleen, as tenants in common, prior to her death on July 3, 2006.

¶ 5        John defaulted on the loan, and Amcore filed the foreclosure complaint on January 20, 2010 (No. 10-CH-266), in Kane County, naming both John and Kathleen as defendants.

¶ 6        The mortgage attached to the complaint showed that only John had granted a security interest in the property.

¶ 7        A judgment of foreclosure and sale on the property was entered on June 11, 2012. The judicial sale occurred on August 14, 2014. Later, the parties to the foreclosure action, BMO, John, and plaintiff (who was granted leave to intervene on October 14, 2014), agreed that the notice of sale indicated that the property to be sold was an "undivided half interest" in the property. It was also undisputed by the parties that an undivided half interest was the only interest that could be sold at the judicial sale. BMO was the successful bidder, in the amount of $112,399. The report of sale and distribution did not indicate that only an undivided half interest was sold.

¶ 8        On April 2, 2015, the trial court vacated the judicial sale of August 14, 2014. On April 28, 2015, the trial court granted BMO's motion to amend the complaint to conform to the proofs and its motion to amend the judgment of foreclosure and sale *nunc pro tunc* to reflect that the mortgaged real estate consisted of an undivided half interest in the property. The trial court

---

[1]In her opening brief, plaintiff continuously cites her appendix rather than the record, in violation of Illinois Supreme Court Rule 341(h)(6) (eff. Jan. 1, 2016).

also expunged the deed, which had not described the property as an undivided half interest. Another judicial sale took place, and a deed was issued to BMO for an undivided half interest in the property. A motion to confirm the sale was granted on January 4, 2017.

¶ 9                                    B. Plaintiff's Complaint

¶ 10    On August 11, 2016, while the foreclosure case was still pending, plaintiff filed her complaint in the present proceedings, alleging the following.

¶ 11    John executed the loan and the mortgage in his individual capacity only. When he borrowed the money for the mortgage, he did not know that he owned only an undivided half interest in the property and that Kathleen's estate owned the other half interest. John proceeded under the assumption that he held title to the property in joint tenancy with Kathleen and, therefore, had mortgaged the entire property. The complaint in the foreclosure case sought the entire property, not just an undivided half interest. And, at least as of the date of being served with John's answer, defendants knew that the loan was secured by only an undivided half interest in the property. Despite that knowledge, defendants sought foreclosure on the entire property.

¶ 12    Defendants proceeded to obtain a judgment of foreclosure against the entire property. Upon entry of the judgment, defendants caused to be published a notice of sale that provided for the sale of only an undivided half interest in the property. At the judicial sale, however, defendants caused the sheriff to sell the entire property. BMO was the successful bidder at the sale, having bid a price of $125,000. After the sale, defendants filed a motion for approval of the sale and distribution, reflecting the sale of the entire property. The court approved the sale of the entire property, and a sheriff's deed was issued and recorded by defendants.

¶ 13    During the pendency of the foreclosure proceeding, John proposed a settlement of a negotiated amount toward the loan in return for a release of the mortgage. He tried to fund the proposal by obtaining a reverse mortgage against the property, the proceeds of which were to be paid to BMO. During this process, he discovered through a title search that the property was held by him and Kathleen as tenants in common.

¶ 14    Plaintiff filed a petition to intervene in the foreclosure proceeding and ultimately prevailed in having the foreclosure court expunge the sheriff's deed. A second judicial sale occurred. BMO was the successful bidder again, but this time for an undivided half interest at a reduced price of $73,500.

¶ 15    Plaintiff further alleged that the clear purpose of accurately describing the secured interest in the notice of sale was to deter third-party bidders at the sale. During the settlement discussions with John, defendants produced a recent appraisal for the property showing a value of $250,000. Defendants thus used the foreclosure proceeding to obtain title to the entire property, with full knowledge that their security interest extended to only an undivided half interest in the property. The loan was substantially undersecured by the property mortgaged by John.

¶ 16    Plaintiff further alleged that defendants filed false pleadings in the foreclosure action, knowingly and intentionally misrepresenting BMO's security interest in the property. Plaintiff alleged that defendants prepared and filed the sheriff's deed representing the transfer of the entire interest in the property in order to obtain the full value of the property and apply it to the balance due on the note executed by John and to avoid the delay and cost of filing a partition

action when and if a proper judicial sale of John's undivided half interest took place. The complaint expressly alleged $51,500 in deterioration of the estate's share of the property during the extended period of delay caused by defendants' dishonest conduct.

## C. Defendants' Motion to Dismiss

BMO filed a combined motion to dismiss all counts of plaintiff's complaint, pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2016)). Daday and Klein, Daday, Aretos and O'Donoghue joined in BMO's motion. Defendants contended that count I for slander of title and count III for abuse of process should be dismissed pursuant to both sections 2-615 and 2-619(a)(9). 735 ILCS 5/2-615, 2-619(a)(9) (West 2016). Finally, as to count V for partition, defendants contended that it too should be dismissed under section 2-619(a)(9), as the same cause was pending between the same parties in the foreclosure case.

On January 6, 2017, the trial court found that counts I and III were barred by the absolute litigation privilege, which applies to the recording of a "judicial deed." The court also dismissed count V, finding that "the partition matter is the subject of another case pending in this Circuit." Plaintiff timely appeals.

## II. ANALYSIS

### A. Standard of Review

Plaintiff contends that the trial court erred in dismissing counts I, III, and V of her complaint. Defendants maintain that the trial court properly dismissed counts I for slander of title and III for abuse of process as barred by the absolute litigation privilege. Defendants also assert that the trial court properly dismissed count V for partition, as the same cause was pending between the same parties in the foreclosure case.

Defendants' motion to dismiss was brought under section 2-619.1 of the Code, which allows a party to file a motion combining a section 2-619 motion to dismiss with a section 2-615 motion to dismiss. See 735 ILCS 5/2-619.1 (West 2016). A section 2-615 motion to dismiss tests the legal sufficiency of a complaint. *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts a defense outside the complaint that defeats it. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). Specifically, section 2-619(a)(9) permits involuntary dismissal where the claim is barred by "other affirmative matter." 735 ILCS 5/2-619(a)(9) (West 2016). When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from them (*Doe v. Chicago Board of Education*, 213 Ill. 2d 19, 28 (2004)), but a court cannot accept as true mere conclusions unsupported by specific facts (*Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009)). See also *Hanks v. Cotler*, 2011 IL App (1st) 101088, ¶ 17 (stating that a motion to dismiss under sections 2-615 and 2-619 admits well-pleaded facts but that "conclusions of law and conclusory factual allegations not supported by allegations of specific facts are not deemed admitted" (internal quotation marks omitted)). Our review of a dismissal under either section 2-615 or section 2-619 is *de novo*. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31.

¶ 24                                    B. Absolute Litigation Privilege

¶ 25    The crux of plaintiff's claim for slander of title in count I concerned the sheriff's deed that was recorded against the property. The claim for abuse of process in count III was based on defendants' course of conduct by which they sought and initially obtained a deed to the property, *i.e.*, the summons, complaint, judgment of foreclosure, court order approving the judicial sale, and deed that were entered in the foreclosure case.

¶ 26    In *Harrell v. Summers*, 32 Ill. App. 2d 358 (1961), the Fourth District Appellate Court set forth the controlling principle of the absolute litigation privilege:

> "It has long been the recognized rule of law that whatever is said or written in a legal proceeding which is pertinent and material to the matters in controversy, is privileged, and no action of slander or libel can be maintained thereon." *Id.* at 361-62.

¶ 27    We find the case of *Ringier America, Inc. v. Enviro-Technics, Ltd.*, 284 Ill. App. 3d 1102 (1996), instructive. In that case, the plaintiff filed a complaint alleging that the defendant Enviro-Technics, Ltd., breached a contract to purchase the plaintiff's real estate. The defendants filed an answer and a counterclaim, admitting that an agreement existed to purchase the property but alleging that the plaintiff had defaulted on the agreement by failing to deliver a suitable title commitment as required by the contract. The defendants sought specific performance or rescission and filed and recorded a *lis pendens* notice. *Id.* at 1103-04. The plaintiff voluntarily dismissed its suit. The plaintiff filed a new complaint for slander of title, alleging that the defendants maliciously and without justification filed the counterclaim and the *lis pendens* notice for the sole purpose of clouding title to the plaintiff's property to interfere with the plaintiff's ability to sell it. The defendants responded by alleging that the *lis pendens* notice was privileged. *Id.* at 1104.

¶ 28    The *Ringier* court noted the existence of a narrow class of cases in which an absolute privilege provides complete immunity from civil action for statements made in the course of litigation, even though the statements are made with malice, because public policy favors the free and unhindered flow of such information. *Id.* at 1105 (citing *Starnes v. International Harvester Co.*, 184 Ill. App. 3d 199, 203 (1989)). Citing other jurisdictions that had considered the question presented, the *Ringier* court further pointed out that nearly all of them had extended the absolute privilege to include the filing and/or recording of a *lis pendens* notice, "provided the underlying litigation makes allegations affecting some ownership interest in the subject property." *Id.* (and the cases cited therein). Of importance to the *Ringier* court's determination was the following reasoning of the Supreme Court of California:

> "It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know that he has brought it [citation], particularly when he is expressly authorized by statute to let all the world know that he has brought it." *Albertson v. Raboff*, 295 P.2d 405, 409 (Cal. 1956).

The *Ringier* court found that the allegations made by the defendants in their counterclaim were protected by the absolute privilege, and the court extended the same protection to the recording of the associated *lis pendens* notice. *Ringier*, 284 Ill. App. 3d at 1106.

¶ 29    We agree with defendants that the filing of a *lis pendens* notice is analogous to the recording of the sheriff's deed in the present case. It constitutes a communication made in the course of litigation affecting an ownership interest in the subject property. The recording of a

- 5 -

sheriff's deed results from a mortgage foreclosure action. As defendants note, the deed provides the title of and the parties to the litigation, the court in which it was brought, and a description of the property. It is similar to a *lis pendens* notice because it provides notice that the property is involved in litigation. See *Applegate Apartments Ltd. Partnership v. Commercial Coin Laundry Systems*, 276 Ill. App. 3d 433, 444 (1995). Accordingly, we extend the absolute litigation privilege to the recording of a sheriff's deed in a mortgage foreclosure action.

¶ 30 The cases plaintiff cites in support of her argument are distinguishable. In *August v. Hanlon*, 2012 IL App (2d) 111252, ¶ 36, the statements an attorney made to a reporter regarding a pending lawsuit were not protected by the absolute litigation privilege, as they had nothing to do with the litigation process. On the other hand, the recording of the sheriff's deed in the present case was the final step of the mortgage foreclosure process and thus was clearly connected to that process.

¶ 31 In *Kurczaba v. Pollock*, 318 Ill. App. 3d 686 (2000), the defendant-attorney disseminated copies of an amended complaint in an advertisement announcing the formation of his new firm. The court determined that the litigation privilege did not apply because the complaint was not yet part of the record, as it was filed without leave of court and was disseminated to groups beyond those covered by the privilege. *Id.* at 703. The court noted that "Illinois clearly limits the attorney litigation privilege and has refused to extend it to third-party communications unrelated to a lawsuit." *Id.* at 705. Here, unlike in *Kurczaba* where the purpose of disseminating the material was to advertise, defendants' purpose in recording the sheriff's deed was related to the foreclosure case.

¶ 32 In *Thompson v. Frank*, 313 Ill. App. 3d 661, 664 (2000), the court refused to extend the litigation privilege to the defendant-attorney, who sent a letter to the opposing party's spouse detailing damaging behavior of the opposing party and encouraging the spouse to act as a witness against the party. Clearly, this communication was an out-of-court communication not authorized by statute, unlike a deed transfer following the entry of an order approving a foreclosure sale. See 735 ILCS 5/15-1509 (West 2016).

¶ 33 Plaintiff contends that the sheriff's deed is not "in a legal proceeding" and that therefore the absolute litigation privilege is inapplicable. Plaintiff is correct that the order approving the sale is the final order in a mortgage foreclosure case. However, the Illinois Mortgage Foreclosure Law (Foreclosure Law) contemplates that a deed transfer will occur after the order approving the sale is granted. See *id.* Plaintiff cannot detach the sheriff's deed from the pleadings in the foreclosure case, the judgment of foreclosure, and the order approving the sale. The recording of the deed simply does not occur outside of the foreclosure action.

¶ 34 Plaintiff also contends that the absolute litigation privilege is inapplicable because she was not a party to the foreclosure case. There is no authority for the proposition that a plaintiff must be a party to the litigation for the absolute litigation privilege to apply. Of importance is that the privilege covers the publication of matter that has a connection to the litigation. See, *e.g.*, *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 25 (the communications protected by the absolute litigation privilege "must relate to proposed or pending litigation [citation], and must be in furtherance of representation").

¶ 35 Plaintiff argues that, even if the filing of the sheriff's deed was subject to a privilege, the privilege should be qualified and not absolute. Plaintiff relies upon *Kurtz v. Hubbard*, 2012 IL App (1st) 111360. In that case, the court determined that statements made in an assessment lien

- 6 -

were not entitled to the absolute litigation privilege because, unlike a *lis pendens* notice, which depends on the underlying litigation for its existence, the assessment lien existed entirely separately from the litigation. *Id.* ¶ 15. As previously noted, the recording of a sheriff's deed is the result of a mortgage foreclosure action and is similar to the filing of a *lis pendens* notice. Therefore, the recording of a sheriff's deed is also distinguishable from the circumstance in *Kurtz*.

¶ 36 Furthermore, although the trial court relied on the absolute litigation privilege in dismissing counts I and III, in affirming the judgment, we are not restricted to the basis relied on by the court. See *Huang v. Brenson*, 2014 IL App (1st) 123231, ¶ 16. In order to defeat a claim of qualified privilege in a cause of action for slander of title, the plaintiff must plead that the statements made were both false and malicious. See *Whildin v. Kovacs*, 82 Ill. App. 3d 1015, 1016 (1980) (slander of title is a false and malicious publication, oral or written, of words that disparage a person's title to property, resulting in special damages). Count I for slander of title contained no allegation that defendants intended for the recording of the sheriff's deed to harm plaintiff's interests. Accordingly, plaintiff failed to plead a cause of action for slander of title.

¶ 37 To bring a claim for abuse of process, the plaintiff must plead "(1) the existence of an ulterior purpose or motive for the use of regular court process, and (2) an act in the use of process not proper in the regular prosecution of a suit." *McGrew v. Heinold Commodities, Inc.*, 147 Ill. App. 3d 104, 111 (1986). Plaintiff's allegations were based entirely upon actions that occurred in the foreclosure case, in which defendants had the right to foreclose. See *id.* ("the validity of the underlying debt is simply irrelevant to an abuse of process claim"). Therefore, plaintiff failed to plead a cause of action for abuse of process.

¶ 38                                      C. Partition
¶ 39 Initially, we must address a motion this court took with the case: plaintiff's motion to strike defendants' arguments regarding the partition issue on the ground of *res judicata*. Plaintiff alleges in her motion that the trial court dismissed her partition claim on the ground that the same cause was pending in the foreclosure case, but according to plaintiff, the foreclosure court granted plaintiff's motion to dismiss BMO's partition claim because BMO lacked standing when it filed its partition claim. Plaintiff further alleges that BMO did not appeal the foreclosure court's order dismissing its partition claim and that the time for filing an appeal has expired. Therefore, plaintiff maintains, *res judicata* bars defendants from litigating the issue of BMO's standing to file its partition claim.

¶ 40 The doctrine of *res judicata* applies when there is a final judgment on the merits rendered by a court of competent jurisdiction, there is identity of parties or their privies, and there is identity of causes of action. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 411 (2002). The foreclosure court's order, which plaintiff attached to the motion to strike, states that the motion to dismiss BMO's partition claim was dismissed *without prejudice* to BMO's right to refile a partition action. A dismissal " 'without prejudice' " signals that there is no final decision on the merits and that the plaintiff is not barred from refiling the action. *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 24. Thus, *res judicata* does not apply, as the order dismissing BMO's partition claim was not final. We therefore deny plaintiff's motion to strike.

¶ 41 We now turn to plaintiff's contention that the trial court erred in dismissing her partition claim.

¶ 42 Under section 2-619(a)(3) of the Code, a defendant may seek dismissal of an action on the ground "[t]hat there is another action pending between the same parties for the same cause." 735 ILCS 5/2-619(a)(3) (West 2016). The decision to grant or deny a section 2-619(a)(3) motion is within the trial court's discretion, unlike motions under other subsections of section 2-619. *Combined Insurance Co. of America v. Certain Underwriters at Lloyd's, London*, 356 Ill. App. 3d 749, 754 (2005). The purpose of section 2-619(a)(3) is to avoid duplicative litigation. *In re Marriage of Epsteen*, 339 Ill. App. 3d 586, 593 (2003). A section 2-619(a)(3) motion is inherently procedural and urges the trial court to weigh several factors when deciding whether it is appropriate for the action to proceed. *Overnite Transportation Co. v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America*, 332 Ill. App. 3d 69, 73 (2002); *Hapag-Lloyd (America), Inc. v. Home Insurance Co.*, 312 Ill. App. 3d 1087, 1090 (2000). Thus, on appeal, a trial court's decision to dismiss pursuant to section 2-619(a)(3) will not be overturned absent an abuse of its discretion. *Continental Casualty Co. v. Radio Materials Corp.*, 366 Ill. App. 3d 345, 347 (2006). An abuse of discretion occurs when the ruling is "arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008). It is the burden of a section 2-619(a)(3) movant to demonstrate through clear and convincing evidence that the two actions involve (1) the same parties and (2) the same cause. *Hapag-Lloyd (America), Inc.*, 312 Ill. App. 3d at 1091.

¶ 43 When defendants moved to dismiss plaintiff's partition claim on the basis that the same cause was pending between the same parties in the foreclosure case, plaintiff responded that the motion to dismiss should be denied because BMO had no standing to file its partition claim and that, when BMO had standing, the proper remedy would be consolidation. Therefore, plaintiff, in effect, conceded that the same cause was pending between the same parties in the foreclosure case.

¶ 44 On appeal, plaintiff asserts for the first time that there was no action pending between the parties when plaintiff filed her claim for partition. We agree with defendants that plaintiff has forfeited this issue, as plaintiff did not raise it in the trial court. Issues not raised in the trial court are forfeited and may not be raised for the first time on appeal. *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 45 Nevertheless, the record shows that the foreclosure case was pending when the trial court in the present case rendered its decision. As pointed out by defendants, when the trial court dismissed plaintiff's partition claim on January 6, 2017, there was an identical claim for partition pending between the same parties in the foreclosure case.[2]

¶ 46 Plaintiff also contends that BMO lacked standing to file its partition claim in the foreclosure case because BMO did not have title to the property when it filed the claim and therefore was not an owner of the property. The issue of standing was a matter for the court in which the claim was pending. See *In re Marriage of Baltzer*, 150 Ill. App. 3d 890, 895 (1986) (orderly administration of justice does not permit one court of this state to ignore action

---

[2]Both plaintiff's motion to strike and a footnote in BMO's response brief state that the foreclosure court dismissed BMO's claim for partition, without prejudice, on March 1, 2017. BMO states that it in fact refiled a partition action on April 17, 2017, in case No. 17-CH-325, which is still pending.

pending in another court of this state). Under the circumstances, the trial court did not abuse its discretion in allowing the partition claim to go forward with the same parties in a different case.

¶ 47                                          III. CONCLUSION

¶ 48            For the preceding reasons, the judgment of the trial court is affirmed.

¶ 49            Affirmed.