**FARM CREDIT BANK OF ST. PAUL,** formerly known as the Federal Land Bank of St. Paul, a corporation, Patricia Carl and Don Carl, Jr., Plaintiffs and Appellees,

v.

**Oscar MARTINSON, Defendant and Appellant.**

**Civ. No. 910045.**

Supreme Court of North Dakota.

Dec. 17, 1991.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Ltd., Fargo, for plaintiffs and appellees; argued by Jon R. Brakke.

Oscar B. Martinson, pro se.

MESCHKE, Justice.

Farm Credit Bank of Saint Paul obtained a judgment evicting Oscar Martinson from a section of farmland. Oscar appeals, arguing that his past improvements and some continued use of the land gave him a "title by occupancy" that was not defeated by foreclosure of a mortgage against his mother, the mortgagor. We affirm.

In 1981, Agnes Martinson mortgaged her 1,280–acre farm in Dickey County to the Bank for a loan of $241,000. Continuing a farming arrangement begun in 1977, Agnes leased part of the farm to John Martinson and Oscar Martinson, her sons, until the mid 1980s. Then, Oscar quit farming and left the state, while John continued to farm some of the land. In 1987, Agnes defaulted on her loan, and the Bank began foreclosure against her.

In the course of proceedings, Agnes consented to the foreclosure. Foreclosure judgment was entered against her, and the Bank bought the farm at the sheriff's foreclosure sale. During the year of redemption, Agnes redeemed a fifteen-acre parcel not affected by this litigation. After sheriff's deeds were issued to the Bank, Agnes and John continued to pasture livestock and to store grain, machinery, and vehicles on the foreclosed farm. The Bank sued to evict them. The county court evicted Agnes and John and ordered them to remove their goods from the farm, ruling that all grain bins were fixtures that became a part of the land acquired by the Bank through foreclosure.

John Martinson appealed, claiming that his ownership of grain bins had not been foreclosed because he was not a party to the foreclosure. We held that, when a farm tenant affixes property to leased land without a written agreement with the landlord for its removal, the property affixed belongs to the owner of the land after the lease ends. *Farm Credit Bank v. Martinson*, 453 N.W.2d 816 (N.D.1990) [*Martinson I*]. However, if the tenant has recorded a timely written notice evidencing an intention to remove affixed grain bins, the tenant may do so within eight months after vacating the land. *Id.* Because John had no written agreement with Agnes, and did not record a timely written notice, we affirmed the judgment evicting him.

After remand of *Martinson I*, John did not remove the machinery and vehicles from the farm. As authorized by that eviction judgment, the Bank scheduled a public sale of remaining goods. One day before the sale, Oscar Martinson showed up and claimed an interest in the farm machinery and vehicles scheduled for removal by public sale. The Bank postponed the sale and, together with the persons who had contracted with the Bank to buy that part of the farm, sued to evict Oscar and his claimed goods from the part of the farm on which those goods were located.

Acting without an attorney, Oscar answered, claiming an interest in the goods and, also, an ownership interest in the land, the grain bins, and other improvements to the land, including fences, wells, and stock dams. Oscar claimed that his ownership interest was unaffected by the foreclosure decree because he had not been a party to the foreclosure. Oscar also counterclaimed for damages and for a declaration that he owned an interest in the land, its improvements, and other goods on the land.

Oscar moved to transfer the Bank's eviction action to district court because his counterclaim for damages exceeded $10,000. The county court refused, ruling that no counterclaim was allowed in an eviction action except for an offset to a money claim for rents. In so ruling, the county court told Oscar that the ruling did not "prevent you from pursuing your cause of action against whomever you wish on a separate action." After trial, the county court concluded that Oscar had proven no ownership interest in the land or fixtures. The judgment ordered Oscar to remove any goods that he still stored on the land, and enjoined Oscar from interfering with the Bank's ownership, possession, and sale of the land.

On appeal, Oscar argues many questions. We address only those necessary to decide this appeal.

■ Oscar argues that the county court "had no right to even hear the case" because the value of the damages sought in his counterclaim exceeded ten thousand dollars and because he moved to transfer the case to district court. Generally, the county court does not have jurisdiction of a civil case with more than ten thousand dol-

lars in controversy. NDCC 27–07.1–17(1).[1] Nevertheless, the county court does have jurisdiction of an action for eviction irrespective of the value of the property when the amount of rents or damages claimed does not exceed ten thousand dollars. *Id.*, at subsection (d). Additionally, NDCC 33–06–01 [2] vests broad jurisdiction in the county court for an eviction action.

Still, Oscar cites NDCC 27–07.1–33 [3] that allows a counterclaim in county court, and directs the county court to "proceed no further with a determination of the rights of the parties" when a counterclaim ex-

ceeds ten thousand dollars and is accompanied by a motion to transfer to district court. However, this statute does not apply here because there is a special provision for an eviction action, and the North Dakota Century Code declares that the specific statute must prevail. NDCC 1–02–07. The specific provision applicable here directs that "[n]o counterclaim can be interposed in such action, except as a setoff to a demand made for damages or for rents and profits." NDCC 33–06–04. As we said in a similar situation, "[b]ecause the summary nature of the eviction action bars counter-

1. The relevant part of NDCC 27–07.1–17 says: *Jurisdiction of county courts.* A county court of any county of this state has jurisdiction in the following types of cases:

1. Civil cases with not more than ten thousand dollars in controversy. The jurisdiction of the county court extends to the following actions:

a. A garnishment action when the sum for which judgment is demanded in such action does not exceed ten thousand dollars.

b. An attachment action when the amount of damages claimed does not exceed ten thousand dollars.

c. An action for claim and delivery of property when the value of the property together with the sum, if any, demanded as damages does not exceed ten thousand dollars.

d. An action for eviction from real property irrespective of value when the amount demanded therein for rents and profits or damages does not exceed ten thousand dollars.

2. NDCC 33–06–01 says: *When eviction maintainable.* An action of eviction to recover the possession of real estate is maintainable in the proper county court when:

1. A party, by force, intimidation, fraud, or stealth, has entered upon the prior actual possession of real property of another and detains the same.

2. A party, after entering peaceably upon real property, turns out by force, threats, or menacing conduct the party in possession.

3. A party, by force or by menaces and threats of violence, unlawfully holds and keeps the possession of any real property, whether the same was acquired peaceably or otherwise.

4. A lessee, in person or by subtenant, holds over after the termination of his lease or expiration of his term, or fails to pay his rent for three days after the same shall be due.

5. A party continues in possession after a sale of the real property under mortgage, execution, order, or any judicial process and after the expiration of the time fixed by law for redemption, or after the execution and delivery of a deed, or after the cancellation and termination

of any contract for deed, bond for deed, or other instrument for the future conveyance of real estate or equity therein.

6. A party continues wrongfully in possession after a judgment in partition or after a sale under an order or decree of a county court.

7. A lessee or a person on the premises with the lessee's consent acts in a manner that unreasonably disturbs other tenants' peaceful enjoyment of the premises.

3. NDCC 27–07.1–33 says:

*Procedure permitting pleading of cross-claims or counterclaims in excess of jurisdiction of county courts.* In all civil actions instituted in a county court a defendant has the right to plead a cross-claim or a counterclaim, compulsory or permissive, in excess of the jurisdiction of the court. When the amount in controversy measured by the value of the relief sought in either a cross-claim or counterclaim exceeds ten thousand dollars or asks for affirmative equitable relief, the county court shall proceed no further with a determination of the rights of the parties provided that the pleading in excess of jurisdiction is accompanied by a motion requesting that the case be transferred to the district court of the same county as the court from which the transfer is requested. The clerk of the district court may not charge or collect an additional fee from the moving party for filing the case in district court. In the absence of a motion the cross-claim or counterclaim must be stricken and the case must proceed as though no counterclaim or cross-claim had been pleaded. When the transfer of a case from the county court to the district court has been ordered pursuant to this section, the clerk of the county court shall certify to the district court all of the original pleadings and other papers and documents pertaining to the case accompanied by a certified copy of the order of transfer and an itemized certificate of transmittal. Upon receipt of a certificate and order, the district court has the jurisdiction to proceed with the case as though it had been originally commenced in the district court including the power to permit or direct appropriate amendments of pleadings.

claims (except money offsets), the county court was not authorized to grant [Oscar Martinson] affirmative relief" on his counterclaim. *South Forks Shopping Center v. Dastmalchi*, 446 N.W.2d 440, 443 (N.D. 1989). The county court correctly ruled that Oscar's counterclaim for damages did not require transfer to district court. In spite of Oscar's attempted counterclaim, the county court had jurisdiction of this eviction action.

■ Oscar argues that he was denied a fair trial because he was not allowed to make some legal arguments. At one point, the trial court sustained an objection to Oscar's testimony about the legal effect of the Bankruptcy Act because he was not qualified to testify as an expert. However, after the trial was completed, the trial court allowed Oscar to present his arguments on the facts and on the law. The trial court offered Oscar additional time to submit a written brief, but Oscar was unwilling to promptly do so. The trial court recognized that "[h]e is acting as his own attorney" and took extra pains to "address ... his claims more specifically than normally would be the case ..." in its decision. From our review of this record, we conclude that the county court gave Oscar a fair opportunity to submit evidence as well as to state his position on the law.

■ Oscar argues that he had an ownership interest in the land that was unaffected by the Bank's foreclosure because the Bank had not made him a party to that action. The rights of an owner of an interest in mortgaged property, that is recorded or known to the mortgagee, are not affected by a judgment of foreclosure when that person is not made a party to the foreclosure. *Yttredahl v. Federal Farm Mortgage Corporation*, 104 N.W.2d 705, 707 (N.D.1960); *Poyzer v. Amenia Seed and Grain Co.*, 381 N.W.2d 192 (N.D.1986); *Quick v. Fischer*, 417 N.W.2d 843 (N.D. 1988). *See also Williston Co-op. Credit Union v. Fossum*, 459 N.W.2d 548 (N.D. 1990); NDCC 47–19–46. On the other hand, if Oscar does not own an interest in the land that is recorded or otherwise known to the Bank, the Bank did not need

to make him a party to the foreclosure action. *Rott v. Mittleider*, 441 N.W.2d 645 (N.D.1989). *See also* NDCC 32–19–39 and 32–19–40. The abstract in evidence shows no conveyance, contract, or transfer giving Oscar any interest of record in the land, although Oscar's name is incidentally mentioned in summaries of some liens and judgments. The trial court concluded that Oscar had no ownership rights in the land.

Yet, Oscar argues that he has an interest in the land because he improved it while farming it and "has continued to use the land as an individual ... as if it were his own" to store machinery and vehicles on it, as well as for hunting and recreation from time to time. Oscar founds this claim on NDCC 47–06–01:

> *Title by occupancy.*—Occupancy for any period confers a title sufficient against all except the state and those who have title by prescription, accession, transfer, will, or succession.

Oscar fails to recognize that the Bank has a title by transfer through the mortgage foreclosure that is superior to any occupancy by Oscar.

Oscar's casual and intermittent use of the land, permitted by his mother while she owned it, is insufficient to confer any ownership interest upon him, or to give notice to others of his claim of an interest in the land. Only open and notorious possession of land is sufficient to charge a mortgagee with knowledge of the rights of an occupant. *Agricultural Credit Corp. v. State*, 74 N.D. 71, 20 N.W.2d 78 (1945). *See also Sailer v. Mercer County*, 75 N.D. 123, 26 N.W.2d 137, 140 (1947) (Actual farming by a tenant is possession); *Tarnovsky v. Security State Bank of Killdeer*, 77 N.W.2d 828, 830–32 (N.D.1956) (Intermittent occupancy by a tenant is "indefinite and inconclusive" evidence of possession, but continuous grazing, fencing, and farming is "actual possession"). To acquire a title by adverse possession, an occupant's acts must be more than casual, permissive, or intermittent. *See* NDCC 28–01–07, 28–01–09, 28–01–11, and 28–01–12. Oscar has not shown any acts of possession that were open, notorious, and adverse, and that con-

tinued up to the foreclosure. *Woodland v. Woodland,* 147 N.W.2d 590, 597 (N.D.1966) ("For ... acts to be adverse, they must not only be actual, but also visible, continuous, notorious, distinct, and hostile, and of such character as to unmistakably indicate an assertion of claim of exclusive ownership by the occupant"). Therefore, Oscar had no possession of, nor property interest in, the land requiring the Bank to join him in its foreclosure.

▆ Likewise, the grain bins that Oscar left behind when he quit farming are no longer owned by Oscar. In *Martinson I,* we concluded that, under NDCC 47–06–04,[4] fixtures and other improvements made to rented farmland by a tenant without a written removal agreement with the landlord, or affixed grain bins not evidenced by a timely written notice recorded with the register of deeds, become the property of the landlord when the lease lapses. What we said in *Martinson I* can be said here, too. "When [Oscar] failed to record a notice stating his intention to remove the bins at the end of his lease, he failed to preserve his right of removal against the subsequent mortgagee. As a result, there was no reason to include [Oscar] as a party in the foreclosure proceeding." 453 N.W.2d at 818. Oscar lost any right to the fixtures and improvements that he left behind when his farm tenancy ended, long before the foreclosure. Because Oscar had no possession of, nor an ownership interest in, the land or its improvements, the county court properly ordered him and his claimed goods evicted.

We have considered Oscar's other arguments. They are without merit.

We affirm the judgment evicting Oscar and his goods from this land.

ERICKSTAD, C.J., VANDE WALLE, J., VERNON R. PEDERSON, Surrogate Justice, and DONALD JORGENSEN, District Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, and DONALD JORGENSEN, District Judge, sitting in place of LEVINE, J., and GIERKE, J., disqualified.

---

**4.** NDCC 47–06–04 says:

*Fixtures—When tenant may remove.*—When a person affixes his property to the land of another without an agreement permitting him to remove it, the thing affixed belongs to the owner of the land, unless he chooses to require the former to remove it. A tenant may remove from the demised premises, any time during the continuance of his term, anything affixed thereto, for the purpose of trade, manufacture, ornament, or domestic use, if the removal can be effected without injury to the premises, unless the thing has become an integral part of the premises by the manner in which it is affixed. When any tenant upon agricultural land shall have built, erected, or placed upon such leased premises during his tenancy, any grain bin, granary, or structure for the purpose of housing grain, and no written agreement between the landlord and the tenant has been made as to its removal, he may remove the same at any time within eight months after the termination of his lease and the vacating of said premises. The tenant shall not have said right of removal as against the owner or holder of any mortgage, deed, or conveyance which shall have been filed and recorded after the building, erection, or placing of such bin, granary, or structure, unless such tenant, within sixty days after such building, erecting, or placing, shall have filed in the office of the register of deeds a written notice describing the land, the character of the structure, and stating that he intends to remove such structure as provided by law.