ATTORNEY FOR APPELLANT
T. Andrew Perkins
Peterson & Waggoner, LLP
Rochester, Indiana

ATTORNEY FOR APPELLEE
Jeffry G. Price
Peru, Indiana



# In the
# Indiana Supreme Court

No. 85S02-0808-CV-478

KEITH MYERS,

*Appellant (Plaintiff below),*

v.

WESLEY C. LEEDY,

*Appellee (Defendant below).*

Appeal from the Wabash Circuit Court, No. 85C01-0611-PL-596
The Honorable Robert C. McCallen, III, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 85A02-0711-CV-999

**October 15, 2009**

**Rucker, Justice.**

This case presents the question of whether a tenant's leasehold interest in property survives a land contract vendee's forfeiture when the tenant is not made a party to the forfeiture action and the vendor has actual knowledge that the tenant is in possession of the property. We conclude that in this case the tenant's leasehold interest survives.

**Facts and Procedural History**

On August 13, 2002, Eli John Yoder and Keith Myers entered into a "Contract for the Purchase and Sale of Real Estate." Ex. at 7. Under terms of the eight-page document, Yoder purchased from Myers, in installments, 200 acres of farmland in Fulton County. The farmland included crop lands of which Yoder would have possession "as soon as the crops growing thereon can be harvested or March 1, 2003 whichever comes sooner." Id. The parties also entered into a "Memorandum of Contract" memorializing the agreement which was recorded in the Fulton County Recorder's office on August 23, 2002.

The 200-acre farmland contained roughly 160 acres of tillable soil. And for the 2004 crop year Yoder entered a written agreement with Wesley C. Leedy to "cash rent"[1] the 160 acres for a lump sum payment of $16,000.00 representing $100.00 per acre. Leedy began farming the land in the spring of 2004. Myers talked to Leedy around that time and was aware that he was farming the land.

In December 2004 Myers filed a complaint against Yoder in the Fulton Circuit Court for breach of the land sale contract. He did not join Leedy as a party to the action.

For the 2005 crop year Yoder again entered a written agreement to cash rent the 160 acres to Leedy. The agreement was "the same basically except for the different crop year." Appellee's App. at 9. Leedy again harvested the crop for that year. And as before, Myers was aware that Leedy was farming the land. Appellee's App. at 41.

---

[1] "Cash leases involve the periodic payment of a rental amount that is either a fixed number of dollars per acre, or a fixed amount for the entire farm. Typically, such amounts are payable in installments or in a lump sum." Roger A. McEowen & Neil E. Harl, Principles of Agricultural Law § 7.02[2] (Spring 2009 ed.).

In the fall of 2005, Leedy had separate conversations with both Myers and Yoder; as a result all parties were under the impression that Leedy would not be leasing the property for the 2006 crop year. In February 2006, Yoder informed Leedy that "the legal matter" between Yoder and Myers had been settled and asked Leedy if he wanted to lease the property again. Appellee's App. at 25-26. In point of fact at least with respect to the breach of contract action pending in the Fulton Circuit Court, the matter had not been settled; rather it had been delayed because of Yoder's pending bankruptcy. In any event on March 1, 2006, Leedy entered into another lease agreement with Yoder. As with the two previous leases Leedy paid Yoder a lump sum of $100.00 per acre for 160 acres to rent the land for the "2006 crop year." Appellant's App. at 23. The lease "commence[d] immediately and [t]erminate[d] upon removal of the crops from the farm ground by [Leedy] in the fall of 2006, or on December 31, 2006, whichever comes first." Id.

On May 17, 2006, the Fulton County litigation between Myers and Yoder was resolved when the trial court entered an order finding Yoder in default of the land sale contract and that forfeiture of Yoder's interest in the property was the appropriate remedy. The trial court also found that "any lien, contract, or other interest [Yoder] may have had in the property is hereby extinguished." Appellant's App. at 38.

Three days later Leedy began farming the property and planted approximately sixty acres of soybeans that day. That evening Myers ordered Leedy off the property and directed him to remove his equipment. The next morning Leedy removed all of his equipment and did not return. Thereafter Myers rented the property to another party for $125.00 per acre.

Claiming damages in the amount of $36,760.00, Leedy filed a complaint against Myers for not allowing him to complete the farming of the property. After a bench trial, the trial court entered judgment in Leedy's favor finding among other things that "John Yoder had the right to cash rent the real estate in question to [Leedy] on March 1, 2006, as he did for two (2) years prior. The burden that [was] created on the real estate survived the forfeiture of John Yoder's interest in May 2006, and [Leedy] should have been allowed to finish planting and harvest[ing] his crop." Appellant's App. at 9. Myers appealed. In a memorandum decision a divided panel

of the Court of Appeals reversed on grounds that the tenancy did not survive the forfeiture of the land sale contract because Leedy had both constructive and actual notice of the breach of contract action when he entered into the 2006 lease. Myers v. Leedy, No. 85A02-0711-CV-999 (Ind. Ct. App. Apr. 30, 2008). Judge Barnes concurred in the result, limited to Leedy's actual notice of the breach of contract action. Having previously granted transfer, we now affirm the trial court.

## Discussion

### I.

This case presents a matter of first impression, namely: whether a tenant's leasehold interest in property survives a land contract vendee's forfeiture when the tenant was not made a party to the forfeiture action and where the vendor had actual knowledge that the tenant was in possession of the property. To resolve the issue we are required to examine several principles. To begin, on the question of whether a tenancy survives a *foreclosure* where the tenant is not made a party to the action, there is a split of authority. Compare, e.g., Home Sav. of America, F.A. v. Freidman, 205 A.D.2d 501, (N.Y. App. Div. 1994) ("[D]efendants-respondents were tenants of the property that became the subject of the instant foreclosure action. The plaintiff was therefore obliged to join them as necessary parties in order to cut off their interest in the mortgaged premises"); Farm Credit Bank of St. Paul v. Martinson, 487 N.W.2d 810, 813 (N.D. 1991) ("The rights of an owner of an interest in mortgaged property, that is recorded *or known to the mortgagee*, are not affected by a judgment of foreclosure when that person is not made a party to the foreclosure.") (emphasis added); with State v. Martin, 898 P.2d 230, 231 (Or. Ct. App. 1995) ("A person with a leasehold interest in property is not a necessary party to a foreclosure action . . . [and defendant-tenant's] right to possession was extinguished before the action began."); Fed. Nat'l Mortgage Ass'n v. Therrian, 678 N.E.2d 193, 194 (Mass. App. Ct. 1997) ("foreclosure terminated the tenancies . . . by operation of law because [they] came into existence after the mortgage"). However the weight of authority subscribes to the view that "a lease is terminated by the foreclosure of a prior mortgage if, and only if, the tenants are made parties to the foreclosure proceedings []." 52 C.J.S., Landlord & Tenant § 154 (2003). See also 55 Am. Jur. 2d Mortgages (1996). "In general, if a mortgage is duly foreclosed and the time for

4

redemption has passed, all of the mortgagor's interest in the lands has been cut off and, consequently, any leasehold interest the mortgagor attempts to convey will be barred. Ordinarily, however, the foreclosure of a mortgage affects the rights and interests of only such persons as are made parties; and one in possession of real estate under claim of right from a mortgagor is a necessary party to a foreclosure of the mortgage, and a decree of foreclosure is not effective as to him or her unless he or she is joined." Id. at § 653.

The underlying rationale for the majority view is that a tenant who takes a lease from the owner of the equity of redemption in mortgaged property, subsequent to the execution of the mortgage, is a necessary defendant in a foreclosure so that title may be conveyed free from any claim or lease on his part. Albert W. Fribourg, Seth V. Elting & Louis M. Fribourg, 1 Wiltsie on Mortgage Foreclosure § 369 (5th ed. 1939). Further, since the objective of foreclosure is to extinguish the equity of redemption and obtain a valid sale of the mortgaged property, all parties who own the equity of redemption, in whole or in part, should be made defendants. George W. Thompson, 10 Thompson on Real Property § 5144 (1957 Replacement Volume). This premise is consistent with longstanding Indiana case authority. See, e.g., Murdock v. Ford, 17 Ind. 52, 54 (1861) (noting, "Where a prior mortgagee, at the time of filing his bill, has either actual or constructive notice of a junior mortgagee, *or other subsequent incumbrance*, he is bound to make the holder thereof a party to the action, or the proceedings therein will not affect him") (emphasis added) (citations omitted). And it is also consistent with principles of notice required by due process and an opportunity to be heard. See Como, Inc. v. Carson Square, Inc., 648 N.E.2d 1247, 1249 (Ind. Ct. App. 1995) (declaring that tenant's leasehold was a "property interest" for due process purposes and that tenant was denied due process when it was not named as a party in a foreclosure action), trans. deemed denied.

We adopt the majority view and hold that where at the time a mortgagee files suit for foreclosure it knows, or upon reasonable diligence should have known, that a tenant is in possession of the property, the tenant's leasehold interest survives the foreclosure action unless the tenant is made a party to the action.[2]

---

[2] We acknowledge that some authorities are to the contrary, including the cases cited by Chief Justice Shepard. However, we do not believe they represent the weight of current authority. Nor does it

5

Of course this case involves forfeiture as opposed to foreclosure.[3] But the watershed case of Skendzel v. Marshall, 261 Ind. 226, 301 N.E.2d 641 (1973) is particularly instructive on this point. In Skendzel the vendor sought a judicial declaration of forfeiture against a tardy purchaser who had already paid $21,000.00 out of a $36,000.00 contract price. The Court noted that under a typical conditional land sale contract, the vendor retains legal title until the total contract price is paid by the vendee, but equitable title vests in the vendee at the time the contract is consummated. Id. at 646. And, once consummated, a land sale contract constitutes a present sale and purchase of the property, with the vendor retaining the legal title of the property as security for the performance of the contract. Id. However, in ordering that the contract at issue be foreclosed in accordance with Indiana Trial Rule 69(C) and the mortgage foreclosure statute, Indiana Code § 32-8-16-1 [now Indiana Code § 32-29-9-1], this Court declared, "[C]onceptually . . . the retention of the title by the vendor is the same as reserving a lien or mortgage. Realistically, vendor-vendee should be viewed as mortgagee-mortgagor. To conceive of the relationship in different terms is to pay homage to form over substance." Id.

For purposes of joining a tenant as a party to the litigation, we discern no logical reason or legitimate rationale for treating a putative forfeiture defendant any differently than a foreclosure defendant. In either event, a tenant's leasehold interest in property survives a forfeiture or foreclosure action to which the tenant was not made a party where the

---

seem desirable to permit a judicial proceeding to terminate interests without an opportunity to be heard. It is a relatively simple matter in a case such as this, with a single tenant, for the seller to join the lessee as a party to the forfeiture if the seller wishes to cut off the lessee's interest. This is what it takes to cut off the interest of any other lien holders who are junior to a mortgagee. Restatement (Third) of Property: Mortgages § 7.1 cmt. B. It may be the case that it is difficult to join all tenants in, for example, an apartment complex. But the rights of the lender/seller may be defined by contract, which may include non-disturbance clauses. Similarly, rights of tenants may be expressly subordinated without the need for joinder. See Powell on Real Property, § P3.11[5] (1996); Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 7.12 & n. 31 (5th ed. 2007); Restatement (Third) of Property: Mortgages § 7.7; Stuart M. Saft, West's Legal Forms: Real Estate Transactions, §§ 18.21, 20.15, 20.16 (3d ed. 2002).

[3] "Foreclosure generally protects the rights of all parties to the contract. Upon judicial sale the proceeds are first applied to the balance of contract principal and interest owed the seller. Then any junior lien-holders take their share. Any surplus goes to the buyer." S.B.D., Inc. v. Sai Mahen, Inc., 560 N.E.2d 86, 87 (Ind. Ct. App. 1990) (quoting Looney v. Farmers Home Admin., 794 F.2d 310, 312 (7th Cir. 1986)). In contrast forfeiture is defined as "[t]he divestiture of property without compensation," Black's Law Dictionary 677 (8th ed. 2004), see Powers v. Ford, 415 N.E.2d 734, 736 (Ind. Ct. App. 1981) (noting that forfeiture serves to cancel and terminate the continued existence of the contract).

6

vendor/mortgagee knew or upon reasonable diligence should have known that a tenant was in possession of the property.

Here, the record shows that at the time Myers filed his breach of contract action against Yoder, in December 2004, Myers knew that Leedy was farming the land. Yet Myers failed to join Leedy in the action. Under our holding today we conclude that the subsequent forfeiture of Yoder's interest did not extinguish Leedy's leasehold interest.

## II.

Myers contends that regardless of whether Leedy should have been joined as a party to the breach of contract action, Leedy's leasehold interest was nonetheless extinguished because Leedy had both constructive as well as actual notice of the legal dispute between Myers and Yoder at the time Leedy entered a contract for the 2006 crop season.

Indiana adheres to the doctrine of "lis pendens" which literally means "pending suit." And our lis pendens practices are governed by statute and court rule. See Ind. Code §§ 32-30-11-1 to 32-30-11-10; Ind. Trial Rule 63.1. The Court of Appeals has discussed the doctrine as follows:

> At common law, *lis pendens* held that a person who acquired an interest in land during the pendency of an action concerning the title thereof had to take notice of such an action, and had to take the property subject to the judgment rendered in the action. Notice of the action arose from the commencement of the action itself.
>
> This general rule was modified by Indiana Code § 34-1-4-2 [now Ind. Code § 32-30-11-2] which requires that a separate written notice of a pending suit be filed with the clerk of the circuit court in order for the action to affect the interest of any *pendent lite* claimants. . . .
>
> *       *       *
>
> However, the statute does not require that notice be filed if the action is founded upon an instrument executed by the party

7

> having the legal title to the real estate, as appears from the proper
> records of the county, and recorded as by law required. . . . In
> these instances, the commencement of the foreclosure action itself
> provides constructive notice to *pendent lite* claimants.

Mid-West Federal Sav. Bank v. Kerlin, 672 N.E.2d 82, 86-87 (Ind. Ct. App. 1996) (internal citations and quotations omitted). As relevant here, Myers retained legal title to the farmland and his ownership interest was reflected by a "Memorandum of Contract" recorded in the Fulton County Recorder's office in August of 2002. Thus, by operation of law, Leedy was deemed to have had constructive notice of Myers' breach of contract action against Yoder commenced two years later.

We have no quarrel with the general proposition that the commencement of a foreclosure action standing alone provides third parties with constructive notice of a pending lawsuit. Indeed one of the underlying purposes of lis pendens is to "provide[] a mechanism for a person to put third parties on notice that he may acquire an interest in real property as a result of a pending legal dispute." Grubb v. Childers, 705 N.E.2d 180, 181 n.1 (Ind. Ct. App. 1998). But in our view it makes no sense to say that a lis pendens notice of a foreclosure proceeding should bind a tenant already in possession. "To hold otherwise would mean that a tenant in possession must regularly check the records of the county recorder's office to determine whether a foreclosure action has been filed." Applegate Apartments Ltd. P'ship v. Commercial Coin Laundry Systems, 657 N.E.2d 1172, 1179 (Ill. App. Ct. 1995). Instead, we reiterate that the leasehold interest of a tenant in possession of property is not extinguished upon constructive notice of pending litigation involving the subject property. [4]

---

[4] Because the issue is not before us this opinion does not discuss the rights of a tenant-in-possession that has been joined as a party in a forfeiture or foreclosure action. However, we note that recently enacted federal legislation entitled "Helping Families Save Their Homes Act of 2009" requires that in the event of foreclosure on certain federally-related mortgage loans or any dwelling or residential real property, existing leases for renters are honored, except in the case of month-to-month leases or owner occupants foreclosing in which cases a minimum of ninety days notice is required. See Pub. L. No. 111-022 § 702 (2009).

But what of actual notice?  Myers essentially contends that it is inappropriate to absolve Leedy of the binding effect of the forfeiture action when Leedy knew of the pending litigation and could have protected his interest by intervening in the lawsuit.  First, we are of the view that actual notice may be relevant where a seller recaptures property without the aid of a court.  See Restatement (Third) of Property: Mortgages § 7.1 & cmt. a. & Reporters' Note cmt. b (1997) (power of sale foreclosure terminates junior interests if it complies with applicable notice requirements).  But where, as here, a seller recaptures property through judicial action, the weight of authority holds that junior lessees must be joined for their interest to be affected.  Id. at cmt. a; Nelson, *supra* n.2, § 7.12 & n. 31; Powell on Real Property § 37.36 [6].  Second, even if actual notice were a relevant consideration, Meyers' claim still fails.

The parties are at odds over whether Leedy had actual knowledge of the pending litigation between Myers and Yoder, or whether the legal dispute between them played a part in Leedy's initial decision not to lease the farmland in 2006.  At one point Leedy testified that he was not able to work out an agreement with Yoder to farm the land for the 2006 crop year because "[Leedy] understood [the farm] was going to be sold."  Appellee's App. at 10.  In fact Yoder inquired as to whether Leedy "wanted to buy it."  Id.  Leedy also testified that sometime around May 2005 he spoke with someone at the Farm Services Agency ("FSA")in Fulton County concerning a subsidy payment for the property and was informed that it "would be held up," Appellee's App. at 27, because "Keith [Myers] had filed a complaint or something on it."  Id.  Leedy also answered "yes" to the question, "So it's fair to say [] that prior to March 1, 2006, you'd spoken with someone at FSA, you'd spoke directly to Keith [Myers] [] and you had a fall conversation with [] Mr. Yoder.  And in those three conversations [], someone to you, you were telling reference [] a legal dispute regarding land between Myers and Yoder."  Appellee's App. at 28.

But whether the "complaint" and "legal dispute" concerned the litigation in the Fulton Circuit Court is not at all clear.  When questioned about the complaint he had filed, Myers testified, "Yeah, 'cause I, you know I tried to twist, twist his arm a little more to you know."  Id.

at 46. When asked, "Whatever happened with that complaint? Did you ever hear anything?" Myers responded, "Yeah, I talked to Sue [an FSA representative] and she said he never did receive the payment for 2005, it was still up in the air. And we also got a piece of paper from FSA stating that the only payments he received for that farm in 2005 were (inaudible) payments for corn and such in 2004." Id. at 46. On further elaboration Myers testified that he filed a complaint because he "didn't want *him* to get [the FSA payment]." Id. at 56 (emphasis added). Although it is unclear whether the "him" refers to Leedy or Yoder, it does appear from the foregoing exchange that the legal dispute of which Leedy may have had knowledge had to do with FSA subsidy payments as opposed to the breach of contract litigation. Indeed "the legal matter" concerning the FSA subsidy payments was resolved; and Leedy began receiving reimbursement checks for crops he had harvested. Id. at 30-31. At the very least the facts are ambiguous on this issue.

Neither party requested findings and conclusions pursuant to Indiana Trial Rule 52(A). In granting judgment in Leedy's favor the trial court entered only abbreviated findings sua sponte. Those findings however mention nothing one way or the other on whether Leedy had actual knowledge of the pending breach of contract litigation between Myers and Yoder when Leedy entered a lease for the 2006 crop year. Our rule concerning general judgment controls as to the issues upon which the court has not made findings. Cochran v. Rodenbarger, 736 N.E.2d 1279, 1281 (Ind. Ct. App. 2000). And we affirm a general judgment if it is sustainable on any legal theory. Lake County Auditor v. Burks, 802 N.E.2d 896, 900 (Ind. 2004). Here, Myers failed to carry any burden he may have had in proving by a preponderance of the evidence that Leedy had actual knowledge of the pending legal dispute between Myers and Yoder concerning the farm land.

**Conclusion**

In this case of first impression we hold that where at the time a land contract vendor files suit seeking forfeiture it knows, or upon reasonable diligence should have known, that a tenant is in possession of the property, the tenant's leasehold interest survives the forfeiture action unless

the tenant is made a party to the forfeiture litigation.  Consistent with this holding the trial court entered judgment in favor of the tenant Leedy.  We affirm the judgment of the trial court.

Dickson and Boehm, JJ., concur.

Shepard, C.J., concurs in result with separate opinion in which Sullivan, J., concurs.

**SHEPARD, Chief Justice, concurring in result.**

What we have here is an appeal involving a contract sale of 200 acres and a single tenant-farmer in a rural area. The court has used this case to alter the property interests of owners and lenders in billions of dollars of commercial and industrial real estate. There is no need for this sort of *sua sponte* expansiveness.

To be sure, we have been treating termination of land-sale contracts largely by reference to the law of mortgage foreclosure since the 1973 decision in Skendzel v. Marshall, 301 N.E.2d 641. Principles from mortgage foreclosure law are thus helpful to resolving the present case. By the same token, the majority makes quite clear that it intends the legal rule announced in this case to govern future decisions in mortgagor/mortgagee cases, a vastly larger and more complex part of the state's economy.

The generic rule that foreclosure by a mortgagee extinguishes the property interests of others named in the foreclosure but not the interests of those not named is simple hornbook law. Ind. Law Encyclopedia, Mortgages § 143 (West 2001). I take this to be a nearly ironclad principle in the world of foreclosing recorded interests. Where the holder of a first mortgage forecloses on the property owner without for some reason naming the holder of the second mortgage or the holder of a subsequent lien, the latter's interest in the property remains unaffected.

The law of mortgage foreclosure as respects varying unrecorded interests is rather different, as one of the authorities cited in the majority opinion demonstrates.

It is true that the court in Farm Credit Bank of St. Paul v. Martinson, 478 N.W.2d 810 (S.D. 1991), majority opin. at 4, recited the same general rule that appears in I.L.E. on the merits; however, the court rejected Martinson's contention that his continued use of the land "as if it were his own" by agreement with his mother, the owner/mortgagor, constituted an interest in the land that was not extinguished in the foreclosure action between the bank and his mother.

12

The approach to interests more formal than Mr. Martinson's appears to be that where a formal lease predates a lender's mortgage, foreclosure and sale on the demised premises does not terminate the lease. Malamut v. Haines, 51 F.Supp. 837 (M.D. Pa. 1943); Bank of America v. Hirsch Mercantile Co., 64 Cal. App. 2d 175, 148 P.2d 110 (1944). By contrast, mortgage foreclosure does operate to terminate a leasehold created subsequent to the mortgage, even where the lessee has not been named in the foreclosure action. Hecht v. Dittman, 56 Iowa 679, 7 N.W. 495 (1880); Korean Presbyterian South Church v. Rack & Ball Club, Inc., 116 Misc.2d 849, 456 N.Y.S.2d 627 (N.Y. Civ. Ct. 1982). Even where a foreclosing mortgagee is deemed not to have extinguished a lease by virtue of an initial foreclosure, the lease may be subject to reforeclosure. Neustadter Foundation v. Bernfeld, 165 Misc. 640, 1 N.Y.S.2d 58 (N.Y. Sup. Ct. 1937).

Whether Indiana ought to follow these authorities or others should the questions involved be squarely put to us in a mortgage foreclosure case I do not know. But this is not a mortgage foreclosure case. It is a forfeiture of interest in a contract sale of agricultural land featuring just three parties who all plainly knew about each other. Since Skendzel, we have treated land contract arrangements like mortgages as a matter of common law equity.

Importing the open-ended idea of equity into the complicated, largely statutory system which governs the massive interests of commercial real estate mortgages, applying it to past and present financial commitments, and declaring that all subordinate unrecorded or informal possessors survive unaffected by foreclosure unless the lender undertakes to obtain service of process on all of them is really quite remarkable.

I perceive that today's ruling is not really consonant with prevailing national doctrine on mortgages, but would put off that debate until such moment as we might have before us parties like mortgage lenders and owner/mortgagors of apartment buildings, shopping centers, or other commercial or industrial real estate whose world is being altered by today's declaration.

Sullivan, J., concurs.